EXHIBIT 1

1  Phillip J. Eskenazi (State Bar No. 158976)
   peskenazi@hunton.com
2  Alexandrea H. Young (State Bar No. 233950)
   ayoung@hunton.com
3  **HUNTON & WILLIAMS LLP**
   550 South Hope Street, Suite 2000
4  Los Angeles, California  90071-2627
   Telephone: (213) 532-2000
5  Facsimile:  (213) 532-2020

6  Attorneys for Defendant
   MAYER HOFFMAN MCCANN P.C.
7

8                    **UNITED STATES DISTRICT COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

10

11  CITY OF OXNARD, a municipal          CASE NO.:  2:17-cv-07240
    corporation,
12                                        **DECLARATION OF ALEXANDREA**
13              Plaintiff,                **H. YOUNG IN SUPPORT OF**
                                          **DEFENDANT MAYER HOFFMAN**
14         v.                             **MCCANN P.C.'S NOTICE OF**
                                          **REMOVAL OF ACTION PURSUANT**
15  MAYER HOFFMAN MCCANN P.C., a          **TO 28 U.S.C. § 1441(b)**
    Missouri corporation; and DOES 1
16  through 100,
17              Defendants.               Complaint Filed:   September 15, 2017
18
19
20
21
22
23
24
25
26
27
28

*(sidebar)* Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DECLARATION OF ALEXANDREA H. YOUNG IN SUPPORT OF NOTICE OF REMOVAL

## DECLARATION OF ALEXANDREA H. YOUNG

I, Alexandrea H. Young, declare:

1.     I am an attorney licensed to practice law in the State of California and am admitted before the United States District Court for the Central District of California. I am of counsel with the law firm of Hunton & Williams LLP, counsel of record for Defendant Mayer Hoffman McCann P.C. ("MHM").

2.     I submit this declaration in support of MHM's Notice of Removal of Action Pursuant to 28 U.S.C. § 1441(b), as filed with this Court on October 2, 2017. I have personal knowledge of the facts stated herein, and if called and sworn as a witness, I would and could testify competently thereto.

3.     Attached as Exhibit A is a true and correct copy of all documents filed in the Action (MHM has not been served with any documents):  the Complaint, the Civil Case Cover Sheet, the First Amended Complaint, and the Summons on First Amended Complaint.  Though these documents have not been served on MHM, MHM learned of this Action at the time it was filed on September 15, 2017 and obtained a copy of the Complaint within a couple days thereafter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 3rd day of October, 2017, at Los Angeles, California.

By: _____
ALEXANDREA H. YOUNG

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

8543.000010 EMF_US 66861636v1

1

DECLARATION OF ALEXANDREA H. YOUNG IN SUPPORT OF NOTICE OF REMOVAL

EXHIBIT A

RECEIVED FOR SCANNING
VENTURA SUPERIOR COURT

SEP 15 2017

Charles E. Slyngstad (SBN 89103)
E-mail: cslyngstad@bwslaw.com
Brian S. Ginter (SBN 265786)
E-Mail: bginter@bwslaw.com
Lauren T. Krapf (SBN 292115)
E-mail: lkrapf@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Tel: 213.236.0600    Fax: 213.236.2700

FILING FEE EXEMPT PURSUANT TO
GOVERNMENT CODE § 6103

Stephen M. Fischer (SBN 174221)
Email: stephen.fischer@oxnard.org
CITY ATTORNEY
OFFICE OF THE CITY ATTORNEY, CITY OF OXNARD
300 West 3rd Street, Suite 100E
Oxnard, California 93030-5714

Attorneys for Plaintiff
CITY OF OXNARD

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF VENTURA

CITY OF OXNARD, a municipal
corporation,

            Plaintiff,

      v.

MAYER HOFFMAN McCANN P.C., a
Missouri corporation, and DOES 1 through
100,

            Defendant.

Case No.

**COMPLAINT FOR DAMAGES FOR
NEGLIGENCE AND BREACH OF
CONTRACT**

## INTRODUCTION

1.     This lawsuit concerns breaches of obligations to the City of Oxnard ("the City" or

"Plaintiff") committed by Defendant Mayer Hoffman McCann P.C., CPA License No. 5091

("Mayer Hoffman" or "Defendant"). Mayer Hoffman was the City's former auditor and firm of

certified public accountants.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4849-3891-1311 v2                              - 1 -

COMPLAINT FOR DAMANGES FOR NEGLIGENCE AND BREACH OF CONTRACT

2.      The City is a public entity located in Ventura County and governed by a five-person City Council.  The City Council consists of an elected Mayor, holding a two-year term, and four councilmembers elected at large for four-year overlapping terms.  The City Council governs the City with the goal of promoting a sound financial base in order to adequately respond to City residents' and businesses' current and future needs.  To accomplish this goal, the City Council relies on independent auditors, like Mayer Hoffman, to conduct independent audits and accurately report on the financial health and welfare of the City.

3.      Beginning in 2004, in the exercise of reasonable diligence to protect the interests and assets of the City, the City engaged Mayer Hoffman to audit the City's Comprehensive Annual Financial Report ("CAFR") and related financial statements and matters, and to provide well prepared management letters intended to reasonably inform the City and its governing body about the financial statements and the information contained in them.  Each year Mayer Hoffman's reports projected confidence in the City's financial statements, compliance, and internal controls.

4.      Mayer Hoffman's obligations as an auditor performing audits in accordance with generally accepted auditing standards ("GAAS") require it to know its audit client and its business, and to plan audits and assess the financial risks to its client in a professional manner designed to obtain reasonable assurance as to whether the client's financial statements are free of material misstatement, whether caused by fraud or error.

5.      Mayer Hoffman performed auditing and accounting services for the City from 2004 through 2012.  Unbeknownst to the City at the time, these services were performed in a dilatory and grossly negligent fashion, and in violation of auditing and accounting principles and standards.  In the engagement for the City, Mayer Hoffman's audit planning and risk assessment were incomplete and insufficient, and the accounting firm's use of internal controls testing was inadequate.  The sum and substance of these issues came to light during the last two fiscal years, after the City hired Eadie + Payne LLP (EP) as its independent auditor.

6.      Mayer Hoffman could have and should have alerted the City to material errors in its financial statements, which in isolation and in the aggregate would have caused the City to

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4849-3891-1311 v2                - 2 -

COMPLAINT FOR DAMAGES FOR NEGLIGENCE AND BREACH OF CONTRACT

1    make different decisions in its operations, fund allocations, and budgeting. Mayer Hoffman's

2    grossly insufficient management letters and disclosures to the City, especially regarding the

3    City's internal control environment, left the City vulnerable to serious compliance and debt

4    issues.

5                                  **PARTIES**

6          7.      Plaintiff, a general law city, is a public entity located and operating entirely in the

7    County of Ventura in the State of California.

8          8.      Defendant Mayer Hoffman is a professional corporation organized and existing

9    under the laws of the State of Missouri and doing business in the County of Ventura and other

10   counties, including Los Angeles and Orange.

11         9.      The City is unaware of the true names and capacities of the Defendants sued

12   herein as Does 1 through 100 and, therefore, sues these Defendants by such fictitious names. The

13   City alleges that each of the fictitious Doe Defendants is responsible in some manner for the

14   damages suffered by the City. The City will amend this Complaint to allege the true names and

15   capacities of such fictitiously named Defendants when the same are ascertained. References in

16   this Complaint to the "Defendant" include references to the named Defendant and Does 1 through

17   100 except where the context clearly indicates otherwise.

18         10.     The City alleges that, as to each cause of action with regard to the named and Doe

19   Defendants set forth herein, each of said Defendants at times acted together to cause injury or

20   harm to the City.

21                          **VENUE AND JURISDICTION**

22         11.     The accounting services that are the subject matter of this Complaint were

23   performed in the County of Ventura.

24         12.     The Complaint involves damages in excess of $25,000.

25                            **GENERAL ALLEGATIONS**

26         13.     From 2004 through 2012, the City contracted with Mayer Hoffman to provide

27   auditing services concerning the City's CAFR, including, without limitation, its June 30 fiscal

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTY'S .  .  AT LAW
LOS ANG...  :

LA #4849-3891-1311 v2                          - 3 -

COMPLAINT FOR DAMANGES FOR NEGLIGENCE AND BREACH OF CONTRACT

1   year-end financial statements.  Mayer Hoffman knew Plaintiff would be using and relying upon

2   its auditing and accounting services, and intended for Plaintiff to rely on those services.

3         14.     Defendant held itself out to the public and to the City as a firm of qualified,

4   certified public accountants and auditors, and otherwise represented to the City that it possessed

5   the requisite knowledge, skill, and expertise to execute the auditing services it was hired to

6   perform for the City, as a public entity in the State of California.  Over the course of eight years,

7   however, Mayer Hoffman performed substantially the same audit and staffed its audit teams with

8   inexperienced auditors, despite knowing the City would be using and relying upon its auditing

9   and accounting services.

10        15.     The City had no reason to believe or to suspect that the Mayer Hoffman auditors

11  had committed professional negligence in its audits of the City's financial statements because

12  each year Mayer Hoffman's independent auditor's reports stated that there were no identifiable

13  deficiencies (in the internal controls or accounting systems) considered to be material weaknesses

14  and that all financial statements presented fairly.  Year after year, Mayer Hoffman's rubber-

15  stamped audits affirmed that the City's internal controls and accounting systems were proficient

16  enough to provide support for the issuance of unmodified opinions of the City's financial

17  statements.  These unqualified audit opinions served as an assurance to the City that its own

18  perception of its financial health was valid and that its accounting systems were reliable.

19        16.     Stated in the alternative, Mayer Hoffman indicated that it could confidently rely on

20  the City's internal controls and accounting systems because it used these very systems to gain

21  assurance that the City's financial statements were free from material misstatement, whether

22  caused by fraud or error.

23        17.     Mayer Hoffman's clean audit reports and assurances caused the deterioration of

24  Oxnard's financial situation each year.  In complete contradiction to Mayer Hoffman's audits,

25  EP's 2015 financial report issued qualified opinions on multiple units due to "a limitation on the

26  audit scope resulting from the inability of the City's capital asset accounting systems to provide

27  information adequate to audit capital assets and construction in progress."  EP recognized that the

28  City's capital asset accounting systems and internal controls were inadequate and, therefore,

1   could not support a reliable presentation of the City's financial statements. EP's 2015 audit

2   initiated the discovery of major financial issues that were unidentified for years by the accounting

3   professionals at Mayer Hoffman.

4        18.     Mayer Hoffman failed to perform its auditing and accounting services in

5   accordance with GAAS because it failed to identify numerous violations of generally accepted

6   accounting principles ("GAAP") and standards established by the Governmental Accounting

7   Standards Board ("GASB"). These violations included, but are not limited to, the following,

8   which a properly planned audit in accordance with GAAS should have disclosed and required

9   Mayer Hoffman to timely disclose to the City:

10         (a)     **Decision-making Based On False Confidence in the City's Financial**

11                **Position**

12         If Mayer Hoffman had exercised reasonable care in the assessment of the City's

13   accounting systems, it would have informed the City of the risk presented by its internal

14   control environment. After extensive and expensive review processes were initiated,

15   asset inventory and valuation consultants determined that material, inventoried moveable

16   assets were not recorded in the City's finance records and that substantial records could

17   not be found. Additions and deletions were not maintained and these problems date back

18   to the years Mayer Hoffman was the City's independent auditor;

19         (b)     **Incorrect Assessment of Landscape and Maintenance Districts**

20         Mayer Hoffman never notified the City that twenty six (26) of its Benefit

21   Assessment Districts were not covering its annual operating costs. Fund balance deficits

22   grew to $3.1 million for the in-debt landscape and maintenance districts because the City

23   was using pooled cash where it should have been using monies only from the taxes or

24   fees received by each individual district;

25         (c)     **Golf Course & Performing Arts Convention Center Operating Deficits**

26         The City's Golf Course and Performing Arts Convention Center ("PACC")

27   operations have required an annual General Fund subsidy of over $1 million for the past

28   16 years. The City cannot cover these operating deficits. Had Mayer Hoffman issued

1    fair and accurate audit opinions regarding the City's financial state and debt obligations,

2    the City would have made operations adjustments and other decisions to avoid the

3    continuation of this unnecessary deficit.  Additionally, a specialized internal audit

4    program focusing on these funds was developed by the Price Paige firm, the internal

5    auditor recently engaged by the City.  The cost of this newly implemented program

6    should have been avoided;

7        (d)    Deficient Development Impact Fee Program

8        During Mayer Hoffman's years as the City's independent auditor, the City's

9    development impact fee program—created to provide the ability to charge new

10   developers costs associated with the public infrastructure needs that result from

11   development growth—was not legally up to date.  The City's impact fees had not been

12   reviewed in decades.  This error resulted in significantly less financial recovery for the

13   City's Capital Improvement Program;

14       As a result of years of undetected oversight, the City has had to hire a consulting

15   firm and acquire additional resources to develop a nexus study and a proposal for new

16   rates. The consulting firm confirmed that the impact fee program was majorly deficient

17   and exposed the City to substantial legal risk, requiring the City to immediately get into

18   compliance, costing upwards of $500,000; and

19       (e)    Millions of Dollars In Uncollected Notes Receivables

20       In 2015, EP discovered that $56 million in long-term notes receivable were not

21   previously booked by the City.  Deferred revenues reflecting funds expected for future

22   repayments associated with these notes increased non-major fund liabilities.  Because

23   Mayer Hoffman missed the lack of notes receivable, the City's chance at collecting

24   repayment considerably decreased.

25       In addition, as the City's auditor, Mayer Hoffman was required to assess internal controls

26   as part of planning its audits and establishing adequate testing procedures and should have been

27   meticulously familiar with the gathering of information that formed the bases of the City's

28   financial statements, as well as the internal controls that were put in place to ensure that the

1   information was accurate and reliable.  Indeed, GAAS requires an auditor to gain an

2   understanding of internal controls sufficient to assess the risk of a material misstatement.  Mayer

3   Hoffman was in the unique position to assess, and was expected to assess in accordance with

4   GAAS, the quality of information the auditors were given to audit, the adequacy of support for

5   the City's financial statements, and the internal controls that should have been in place to ensure

6   the accuracy and reliability of that information.  The assessment of the City's internal controls

7   performed by Mayer Hoffman in connection with its audits of the City's financial statements did

8   not comport with GAAS.

9         19.    In a direct contravention of customs, standards, and practices that are typical in the

10   practice of auditing and accounting, Mayer Hoffman failed to notify the City of the following

11   lack of internal controls, among others, relevant to the presentation and preparation of the City's

12   financial statements that were audited by Defendant:

13         (a)    There were no standard procedures to create cash journal entries;

14         (b)    There was no effective general ledger system and the City was using

15   heavily outdated HTE software with severe functional limitations;

16         (c)    A reconciliation of accounts receivable against the general ledger was not

17   performed periodically or at year-end and the review of aging and collections for utilities was not

18   centralized in the Finance Department;

19         (d)    There were no written accounting policies and procedures that specified the

20   correct treatment for estimating the allowance for uncollectible accounts and bad debt expense;

21         (e)    There were no policies or procedures in place to capture new debt

22   agreements and capital leases; and

23         (f)    The City improperly recorded the municipal golf course and PACC funds

24   as business-type activities instead of government-type activities.

25         20.    Mayer Hoffman consistently rated control risk as low for the City, despite the

26   obvious deficiencies.  Although Mayer Hoffman will argue today that the City should have

27   discovered the internal controls and accounting systems issues affecting the City's operations, or

28   should have had different financial recommendations from its staff, the fact is that Mayer

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4849-3891-1311 v2              - 7 -

COMPLAINT FOR DAMAGES FOR NEGLIGENCE AND BREACH OF CONTRACT

1  Hoffman's failure to understand, appreciate, or bring to the Plaintiff's attention the material issues

2  involved in the internal control environment left the City vulnerable to the compliance,

3  administrative, accounting, and financial issues it now faces.

4      21.    Because Mayer Hoffman failed to communicate to the City the material failures in

5  its internal controls, and because the auditors did not modify its audit opinions as required by

6  GAAS when such failures led to materially misstated financial information, the City reasonably

7  relied upon its unqualified audit opinions.

8      22.    The lack of internal controls materially and substantially led to the City's current,

9  jeopardized financial situation. Had the above-described internal controls been in place, the City

10  would not have incurred the following additional "aftermath" costs:

11      (a)    **Inability to Secure Letters of Credit**

12      Because Mayer Hoffman issued clean audits, the City entered into long-term debt

13  obligations with various financial institutions. Among the financial institutions

14  supporting the City's debt obligations was MUFG Union Bank ("Union Bank"), which

15  provided letters of credit for Wastewater Revenue Bonds and Lease Revenue Bonds.

16  Union Bank is declining to renew its letter of credit. The City is also vulnerable to a

17  swap termination that would result in the need to pay off a $16 million loan immediately,

18  as well as a $4 million penalty. An event of default could result in over $100 million in

19  outstanding debt becoming due and payable.

20      (b)    **Delayed Refinancing of Outstanding Debt**

21      As a direct result of Mayer Hoffman's negligence, the City will be required to

22  enter the debt market to fund necessary improvements to its utility funds, as well as to

23  fund government-related and business-related activities. A large debt issue can cause

24  millions of dollars in interest costs to City residents, based on different credit ratings.

25  Had Mayer Hoffman highlighted the serious problems in the City's utility funds, the City

26  would have made different financial decisions and would find itself in a much stronger

27  financial position today, without the need for such a level of indebtedness. The City

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4849-3891-1311 v2                      - 8 -

COMPLAINT FOR DAMAGES FOR NEGLIGENCE AND BREACH OF CONTRACT

1    could have and would have pushed through rate adjustments and refinanced sooner.

2    Instead, the City will be subject to much higher interest rates on necessary debt.

3            (c)     **$16 Million Dollar Loan And Belated Infrastructure Repairs**

4            After uncovering the City's true financial situation, which was unknown to the

5    City during and immediately after the years Mayer Hoffman issued its audits, the City

6    was forced to manage the serious threat of insolvency and preserve the General Fund

7    balance.  As a result of the foregoing, the City approved a $16 million dollar loan from

8    the Measure O Fund.  The original purpose of the Measure O ordinance was to provide

9    enhanced levels of vital city services, including increasing street paving and

10   sidewalk/pothole repair to improve traffic flow, upgrading storm water drains, improving

11   senior services, increasing building code compliance, and improving other infrastructure-

12   related City services.

13           Due to the necessary interfund loan, the Measure O repair plans had to be put on

14   hold.  Now, the City will have to pay more money for more complicated improvement

15   services.  Delayed repairs could result in enhanced infrastructural depletion.  For

16   example, roads that might have required basic overlay will now necessitate complete

17   removal and replacement.

18           (d)     **Necessary Consulting Costs**

19           As a result of Mayer Hoffman's deficient audits, the City hired EP to conduct a

20   review of over a decade of issues and material misstatements, consult with City staff and

21   counsel, present findings, and make hundreds of recommendations for improving the

22   City's financial affairs and internal controls.  EP also did a comprehensive analysis to

23   determine the gravity of the City's financial position and its vulnerability to additional

24   material misstatements, due to fraud or error.  These services have resulted in

25   approximately $1.2 million dollars in additional costs to the City.  EP made necessary

26   and significant prior period adjustments, many resulting from overlooked serious issues

27   relating to the City's outdated technological and industrial infrastructure.  The City has

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES
    LA #4849-3891-1311 v2        - 9 -

COMPLAINT FOR DAMAGES FOR NEGLIGENCE AND BREACH OF CONTRACT

1    also had to implement costly information technology master plans, fleet maintenance,

2    and internal audit programs—totaling to millions of dollars in additional expenses.

3    <u>FIRST CAUSE OF ACTION</u>

4    <u>(Professional Negligence)</u>

5    <u>(Against Defendant Mayer Hoffman and Does 1 through 100)</u>

6        23.     The City realleges and incorporates by reference the allegations of paragraphs 1

7    through 23 of this Complaint as though set forth in full.

8        24.     Mayer Hoffman and Does 1 through 100 each owed the City a duty of care, and

9    the duty to competently perform the auditing services that they were hired by the City to perform

10   in accordance with due professional care as set forth in GAAS and as legally required by holding

11   themselves out as certified public accountants.

12       25.     By committing the errors and omissions described in detail above in this

13   Complaint, Mayer Hoffman and Does 1 through 100, and each of them, breached the duty of due

14   professional care owed to the City.  The breach of these duties constitutes negligence.

15       26.     As a direct, legal and proximate result of the negligence of Mayer Hoffman and

16   Does 1 through 100, the City has incurred damages in an amount that will be proved at trial but

17   which is well in excess of the jurisdictional minimum of this court.

18   <u>SECOND CAUSE OF ACTION</u>

19   <u>(Breach of Contract)</u>

20   <u>(Against Defendant Mayer Hoffman and Does 25 through 100)</u>

21       27.     The City realleges and incorporates by reference the allegations of paragraphs 1

22   through 23 of this Complaint as though set forth in full.

23       28.     The City and Mayer Hoffman entered into several written agreements in

24   connection with the auditing services Mayer Hoffman provided to the City for each of the years

25   between 2004 through 2012.  Each agreement provides that Mayer Hoffman shall indemnify the

26   City for, among other things, any acts, errors or omissions of Mayer Hoffman, its employees,

27   representatives, subcontractors, or agents in the performance of the auditing services.

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4849-3891-1311 v2                                    - 10 -

COMPLAINT FOR DAMAGES FOR NEGLIGENCE AND BREACH OF CONTRACT

37.     By not performing in compliance with the contractual requirements and also engaging in the acts, errors and omissions described in detail above in this Complaint, Mayer Hoffman legally and proximately caused the City to incur in excess of $1 million in damages, according to proof.

38.     Mayer Hoffman breached its contractual duties to the City by refusing to indemnify the City for all costs resulting from Mayer Hoffman's acts, errors, or omissions, including attorneys' fees and other costs, incurred by the City in order to legally comply with accounting and finance obligations.

39.     As a direct, legal and proximate result of the breaches of contract by Mayer Hoffman, the City has incurred damages in an amount that will be proved at trial but which is in excess of the jurisdictional minimum of this court.

## PRAYER FOR RELIEF

The City prays for judgment against Defendant Mayer Hoffman as follows:

1.      For Special, General and Consequential Damages according to proof at trial.

2.      For interest at the legal rate on all amounts awarded;

3.      For attorney's fees as prevailing party and costs of suit incurred herein; and

4.      For further and other relief as the court deems just and proper.


Dated: September 14, 2017                    BURKE, WILLIAMS & SORENSEN, LLP


                                             By: _Charles E. Slyngstad_
                                                 Charles E. Slyngstad
                                                 Brian S. Ginter
                                                 Lauren T. Krapf
                                             Attorneys for Plaintiff
                                             CITY OF OXNARD

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4849-3891-1311 v2                        - 11 -

COMPLAINT FOR DAMANGES FOR NEGLIGENCE AND BREACH OF CONTRACT

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Charles E. Slyngstad, SBN 89103<br>Burke, Williams & Sorensen, LLP<br>444 S. Flower Street, Suite 2400<br>Los Angeles, California 90071<br>TELEPHONE NO.: (213)236.0600   FAX NO.: (213)236.2700<br>ATTORNEY FOR (Name): Plaintiff CITY OF OXNARD | VENTURA<br>SUPERIOR COURT<br>**FILED**<br>SEP 15 2017<br>MICHAEL D. PLANET<br>Executive Officer and Clerk<br>BY: _____, Deputy<br>**ALBERT VILLEGAS JR.** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **VENTURA**
STREET ADDRESS: 800 S. Victoria Avenue
MAILING ADDRESS: Post Office Box 6489
CITY AND ZIP CODE: Ventura, California 93006-6489
BRANCH NAME: Main Courthouse

CASE NAME: CITY OF OXNARD v. MAYER HOFFMAN McCANN

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 56-2017-00501459-CU-PN-VTA |
|---|---|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☒ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought (check all that apply): a. ☒ monetary b. ☐ nonmonetary; declaratory or injunctive relief    c. ☐ punitive
4. Number of causes of action (specify): two
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: September 14, 2017

Charles E. Slyngstad
(TYPE OR PRINT NAME)

► _Charles E. Slyngstad_
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36) Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

American LegalNet, Inc.
www.FormsWorkflow.com

1  Charles E. Slyngstad (SBN 89103)
   E-mail: cslyngstad@bwslaw.com
2  Brian S. Ginter (SBN 265786)
   E-Mail: bginter@bwslaw.com
3  Lauren T. Krapf (SBN 292115)
   E-mail: lkrapf@bwslaw.com
4  BURKE, WILLIAMS & SORENSEN, LLP
   444 South Flower Street, Suite 2400
5  Los Angeles, CA 90071-2953
   Tel: 213.236.0600    Fax: 213.236.2700
6
7  Stephen M. Fischer (SBN 174221)
   Email: stephen.fischer@oxnard.org
   CITY ATTORNEY
8  OFFICE OF THE CITY ATTORNEY, CITY OF OXNARD
   300 West 3rd Street, Suite 100E
9  Oxnard, California 93030-5714
10 Attorneys for Plaintiff
   CITY OF OXNARD
11
12              SUPERIOR COURT OF THE STATE OF CALIFORNIA
13                        COUNTY OF VENTURA
14
15 CITY OF OXNARD, a municipal          Case No.  56-2017-00501459-CU-PN-VTA
   corporation,
16
                    Plaintiff,
17                                       **FIRST AMENDED COMPLAINT FOR
        v.                               DAMAGES FOR NEGLIGENCE AND
18                                       BREACH OF CONTRACT**
   MAYER HOFFMAN McCANN P.C., a
19 Missouri corporation, and DOES 1 through
   100,
20
                    Defendant.
21
22
23                          __INTRODUCTION__
24      1.      This lawsuit concerns breaches of obligations to the City of Oxnard ("the City" or
25 "Plaintiff") committed by Defendant Mayer Hoffman McCann P.C., CPA License No. 5091
26 ("Mayer Hoffman" or "Defendant").  Mayer Hoffman was the City's former auditor and firm of
27 certified public accountants.
28

LA #4841-1165-0640 v1

- 1 -

FILING FEE EXEMPT PURSUANT TO
GOVERNMENT CODE § 6103

VENTURA
SUPERIOR COURT
**FILED**

**SEP 25 2017**

MICHAEL D. PLANET
Executive Officer and Clerk
BY: _____, Deputy

**ADRIANA VELASCO**

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

2.     The City is a public entity located in Ventura County and governed by a five-person City Council. The City Council consists of an elected Mayor, holding a two-year term, and four councilmembers elected at large for four-year overlapping terms. The City Council governs the City with the goal of promoting a sound financial base in order to adequately respond to City residents' and businesses' current and future needs. To accomplish this goal, the City Council relies on independent auditors, like Mayer Hoffman, to conduct independent audits and accurately report on the financial health and welfare of the City.

3.     Beginning in 2004, in the exercise of reasonable diligence to protect the interests and assets of the City, the City engaged Mayer Hoffman to audit the City's Comprehensive Annual Financial Report ("CAFR") and related financial statements and matters, and to provide well prepared management letters intended to reasonably inform the City and its governing body about the financial statements and the information contained in them. Each year Mayer Hoffman's reports projected confidence in the City's financial statements, compliance, and internal controls.

4.     Mayer Hoffman's obligations as an auditor performing audits in accordance with generally accepted auditing standards ("GAAS") require it to know its audit client and its business, and to plan audits and assess the financial risks to its client in a professional manner designed to obtain reasonable assurance as to whether the client's financial statements are free of material misstatement, whether caused by fraud or error.

5.     Mayer Hoffman performed auditing and accounting services for the City from 2004 through 2012. Unbeknownst to the City at the time, these services were performed in a dilatory and grossly negligent fashion, and in violation of auditing and accounting principles and standards. In the engagement for the City, Mayer Hoffman's audit planning and risk assessment were incomplete and insufficient, and the accounting firm's use of internal controls testing was inadequate. The sum and substance of these issues came to light during the last two fiscal years, 2014-15 and 2015-16, after the City hired Eadie + Payne LLP (EP) as its independent auditor in connection with the 2014-15 fiscal year audit.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4841-1165-0640 v1                              - 2 -

FIRST AMENDED COMPLAINT FOR DAMAGES FOR NEGLIGENCE AND BREACH OF CONTRACT

6.      In December 2016, within two years of when the City discovered or should have discovered the Defendants' conduct at issue in this Complaint, the City entered into a Tolling Agreement, subsequently extended, to toll the time within which the City may commence a lawsuit such as the present lawsuit against Mayer Hoffman.  The Tolling Agreement as extended expired on September 15, 2017, the date on which this lawsuit originally was filed in the Superior Court of the County of Ventura.

7.      Mayer Hoffman could have and should have alerted the City to material errors in its financial statements, which in isolation and in the aggregate would have caused the City to make different decisions in its operations, fund allocations, and budgeting.  Mayer Hoffman's grossly insufficient management letters and disclosures to the City, especially regarding the City's internal control environment, left the City vulnerable to serious compliance and debt issues.

**PARTIES**

8.      Plaintiff, a general law city, is a public entity located and operating entirely in the County of Ventura in the State of California.

9.      Defendant Mayer Hoffman is a professional corporation organized and existing under the laws of the State of Missouri and doing business in the County of Ventura and other counties, including Los Angeles and Orange.

10.     The City is unaware of the true names and capacities of the Defendants sued herein as Does 1 through 100 and, therefore, sues these Defendants by such fictitious names.  The City alleges that each of the fictitious Doe Defendants is responsible in some manner for the damages suffered by the City.  The City will amend this Complaint to allege the true names and capacities of such fictitiously named Defendants when the same are ascertained.  References in this Complaint to the "Defendant" include references to the named Defendant and Does 1 through 100 except where the context clearly indicates otherwise.

11.     The City alleges that, as to each cause of action with regard to the named and Doe Defendants set forth herein, each of said Defendants at times acted together to cause injury or harm to the City.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4841-1165-0640 v1                                            - 3 -

FIRST AMENDED COMPLAINT FOR DAMAGES FOR NEGLIGENCE AND BREACH OF CONTRACT

1
          **VENUE AND JURISDICTION**

2
   12. The accounting services that are the subject matter of this Complaint were

3
performed in the County of Ventura.

4
   13. The Complaint involves damages in excess of $25,000.

5
          **GENERAL ALLEGATIONS**

6
   14. From 2004 through 2012, the City contracted with Mayer Hoffman to provide

7
auditing services concerning the City's CAFR, including, without limitation, its June 30 fiscal

8
year-end financial statements.  Mayer Hoffman knew Plaintiff would be using and relying upon

9
its auditing and accounting services, and intended for Plaintiff to rely on those services.

10
   15. Defendant held itself out to the public and to the City as a firm of qualified,

11
certified public accountants and auditors, and otherwise represented to the City that it possessed

12
the requisite knowledge, skill, and expertise to execute the auditing services it was hired to

13
perform for the City, as a public entity in the State of California.  Over the course of eight years,

14
however, Mayer Hoffman performed substantially the same audit and staffed its audit teams with

15
inexperienced auditors, despite knowing the City would be using and relying upon its auditing

16
and accounting services.

17
   16. The City had no reason to believe or to suspect that the Mayer Hoffman auditors

18
had committed professional negligence in its audits of the City's financial statements because

19
each year Mayer Hoffman's independent auditor's reports stated that there were no identifiable

20
deficiencies (in the internal controls or accounting systems) considered to be material weaknesses

21
and that all financial statements presented fairly.  Year after year, Mayer Hoffman's rubber-

22
stamped audits affirmed that the City's internal controls and accounting systems were proficient

23
enough to provide support for the issuance of unmodified opinions of the City's financial

24
statements.  These unqualified audit opinions served as an assurance to the City that its own

25
perception of its financial health was valid and that its accounting systems were reliable.

26
   17. Stated in the alternative, Mayer Hoffman indicated that it could confidently rely on

27
the City's internal controls and accounting systems because it used these very systems to gain

28
assurance that the City's financial statements were free from material misstatement, whether

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4841-1165-0640 v1       - 4 -

FIRST AMENDED COMPLAINT FOR DAMAGES FOR NEGLIGENCE AND BREACH OF CONTRACT

1   caused by fraud or error.  EP's 2015 audit initiated the discovery of major financial issues that

2   were unidentified for years by the accounting professionals at Mayer Hoffman.

3       18.      Mayer Hoffman's clean audit reports and assurances caused the deterioration of

4   Oxnard's financial situation each year.  In complete contradiction to Mayer Hoffman's audits,

5   EP's 2015 financial report issued qualified opinions on multiple units due to "a limitation on the

6   audit scope resulting from the inability of the City's capital asset accounting systems to provide

7   information adequate to audit capital assets and construction in progress."  EP recognized that the

8   City's capital asset accounting systems and internal controls were inadequate and, therefore,

9   could not support a reliable presentation of the City's financial statements.

10      19.      Mayer Hoffman failed to perform its auditing and accounting services in

11  accordance with GAAS because it failed to identify numerous violations of generally accepted

12  accounting principles ("GAAP") and standards established by the Governmental Accounting

13  Standards Board ("GASB").  These violations included, but are not limited to, the following,

14  which a properly planned audit in accordance with GAAS should have disclosed and required

15  Mayer Hoffman to timely disclose to the City:

16          (a)      **Decision-making Based On False Confidence in the City's Financial**

17          **Position**

18              If Mayer Hoffman had exercised reasonable care in the assessment of the City's

19          accounting systems, it would have informed the City of the risk presented by its internal

20          control environment.  After extensive and expensive review processes were initiated,

21          asset inventory and valuation consultants determined that material, inventoried moveable

22          assets were not recorded in the City's finance records and that substantial records could

23          not be found.  Additions and deletions were not maintained and these problems date back

24          to the years Mayer Hoffman was the City's independent auditor;

25          (b)      **Incorrect Assessment of Landscape and Maintenance Districts**

26              Mayer Hoffman never notified the City that twenty six (26) of its Benefit

27          Assessment Districts were not covering its annual operating costs.  Fund balance deficits

28          grew to $3.1 million for the in-debt landscape and maintenance districts because the City

1   was using pooled cash where it should have been using monies only from the taxes or

2   fees received by each individual district;

3           (c)     **Golf Course & Performing Arts Convention Center Operating Deficits**

4         The City's Golf Course and Performing Arts Convention Center ("PACC")

5   operations have required an annual General Fund subsidy of over $1 million for the past

6   16 years.  The City cannot cover these operating deficits.  Had Mayer Hoffman issued

7   fair and accurate audit opinions regarding the City's financial state and debt obligations,

8   the City would have made operations adjustments and other decisions to avoid the

9   continuation of this unnecessary deficit.  Additionally, a specialized internal audit

10  program focusing on these funds was developed by the Price Paige firm, the internal

11  auditor recently engaged by the City.  The cost of this newly implemented program

12  should have been avoided;

13          (d)     **Deficient Development Impact Fee Program**

14        During Mayer Hoffman's years as the City's independent auditor, the City's

15  development impact fee program—created to provide the ability to charge new

16  developers costs associated with the public infrastructure needs that result from

17  development growth—was not legally up to date.  The City's impact fees had not been

18  reviewed in decades.  This error resulted in significantly less financial recovery for the

19  City's Capital Improvement Program;

20        As a result of years of undetected oversight, the City has had to hire a consulting

21  firm and acquire additional resources to develop a nexus study and a proposal for new

22  rates. The consulting firm confirmed that the impact fee program was majorly deficient

23  and exposed the City to substantial legal risk, requiring the City to immediately get into

24  compliance, costing upwards of $500,000; and

25          (e)     **Millions of Dollars In Uncollected Notes Receivables**

26        In 2015, EP discovered that $56 million in long-term notes receivable were not

27  previously booked by the City.  Deferred revenues reflecting funds expected for future

28  repayments associated with these notes increased non-major fund liabilities.  Because

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4841-1165-0640 v1

- 6 -

FIRST AMENDED COMPLAINT FOR DAMAGES FOR NEGLIGENCE AND BREACH OF CONTRACT

1   Mayer Hoffman missed the lack of notes receivable, the City's chance at collecting

2   repayment considerably decreased.

3       In addition, as the City's auditor, Mayer Hoffman was required to assess internal controls

4   as part of planning its audits and establishing adequate testing procedures and should have been

5   meticulously familiar with the gathering of information that formed the bases of the City's

6   financial statements, as well as the internal controls that were put in place to ensure that the

7   information was accurate and reliable.  Indeed, GAAS requires an auditor to gain an

8   understanding of internal controls sufficient to assess the risk of a material misstatement.  Mayer

9   Hoffman was in the unique position to assess, and was expected to assess in accordance with

10   GAAS, the quality of information the auditors were given to audit, the adequacy of support for

11   the City's financial statements, and the internal controls that should have been in place to ensure

12   the accuracy and reliability of that information.  The assessment of the City's internal controls

13   performed by Mayer Hoffman in connection with its audits of the City's financial statements did

14   not comport with GAAS.

15       20.    In a direct contravention of customs, standards, and practices that are typical in the

16   practice of auditing and accounting, Mayer Hoffman failed to notify the City of the following

17   lack of internal controls, among others, relevant to the presentation and preparation of the City's

18   financial statements that were audited by Defendant:

19       (a)    There were no standard procedures to create cash journal entries;

20       (b)    There was no effective general ledger system and the City was using

21   heavily outdated HTE software with severe functional limitations;

22       (c)    A reconciliation of accounts receivable against the general ledger was not

23   performed periodically or at year-end and the review of aging and collections for utilities was not

24   centralized in the Finance Department;

25       (d)    There were no written accounting policies and procedures that specified the

26   correct treatment for estimating the allowance for uncollectible accounts and bad debt expense;

27       (e)    There were no policies or procedures in place to capture new debt

28   agreements and capital leases; and

LA #4841-1165-0640 v1    - 7 -

FIRST AMENDED COMPLAINT FOR DAMAGES FOR NEGLIGENCE AND BREACH OF CONTRACT

(f)     The City improperly recorded the municipal golf course and PACC funds as business-type activities instead of government-type activities.

21.     Mayer Hoffman consistently rated control risk as low for the City, despite the obvious deficiencies.  Although Mayer Hoffman will argue today that the City should have discovered the internal controls and accounting systems issues affecting the City's operations, or should have had different financial recommendations from its staff, the fact is that Mayer Hoffman's failure to understand, appreciate, or bring to the Plaintiff's attention the material issues involved in the internal control environment left the City vulnerable to the compliance, administrative, accounting, and financial issues it now faces.

22.     Because Mayer Hoffman failed to communicate to the City the material failures in its internal controls, and because the auditors did not modify its audit opinions as required by GAAS when such failures led to materially misstated financial information, the City reasonably relied upon its unqualified audit opinions.

23.     The lack of internal controls materially and substantially led to the City's current, jeopardized financial situation.  Had the above-described internal controls been in place, the City would not have incurred the following additional "aftermath" costs:

(a)     **Inability to Secure Letters of Credit**

Because Mayer Hoffman issued clean audits, the City entered into long-term debt obligations with various financial institutions.  Among the financial institutions supporting the City's debt obligations was MUFG Union Bank ("Union Bank"), which provided letters of credit for Wastewater Revenue Bonds and Lease Revenue Bonds. Union Bank is declining to renew its letter of credit.  The City is also vulnerable to a swap termination that would result in the need to pay off a $16 million loan immediately, as well as a $4 million penalty. An event of default could result in over $100 million in outstanding debt becoming due and payable.

(b)     **Delayed Refinancing of Outstanding Debt**

As a direct result of Mayer Hoffman's negligence, the City will be required to enter the debt market to fund necessary improvements to its utility funds, as well as to

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4841-1165-0640 v1                                    - 8 -

FIRST AMENDED COMPLAINT FOR DAMAGES FOR NEGLIGENCE AND BREACH OF CONTRACT

1    fund government-related and business-related activities.  A large debt issue can cause

2    millions of dollars in interest costs to City residents, based on different credit ratings.

3    Had Mayer Hoffman highlighted the serious problems in the City's utility funds, the City

4    would have made different financial decisions and would find itself in a much stronger

5    financial position today, without the need for such a level of indebtedness.  The City

6    could have and would have pushed through rate adjustments and refinanced sooner.

7    Instead, the City will be subject to much higher interest rates on necessary debt.

8            (c)    **$16 Million Dollar Loan And Belated Infrastructure Repairs**

9            After uncovering the City's true financial situation, which was unknown to the

10   City during and immediately after the years Mayer Hoffman issued its audits, the City

11   was forced to manage the serious threat of insolvency and preserve the General Fund

12   balance.  As a result of the foregoing, the City approved a $16 million dollar loan from

13   the Measure O Fund.  The original purpose of the Measure O ordinance was to provide

14   enhanced levels of vital city services, including increasing street paving and

15   sidewalk/pothole repair to improve traffic flow, upgrading storm water drains, improving

16   senior services, increasing building code compliance, and improving other infrastructure-

17   related City services.

18           Due to the necessary interfund loan, the Measure O repair plans had to be put on

19   hold.  Now, the City will have to pay more money for more complicated improvement

20   services.  Delayed repairs could result in enhanced infrastructural depletion.  For

21   example, roads that might have required basic overlay will now necessitate complete

22   removal and replacement.

23           (d)    **Necessary Consulting Costs**

24           As a result of Mayer Hoffman's deficient audits, the City hired EP to conduct a

25   review of over a decade of issues and material misstatements, consult with City staff and

26   counsel, present findings, and make hundreds of recommendations for improving the

27   City's financial affairs and internal controls.  EP also did a comprehensive analysis to

28   determine the gravity of the City's financial position and its vulnerability to additional

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4841-1165-0640 v1                                    - 9 -

FIRST AMENDED COMPLAINT FOR DAMAGES FOR NEGLIGENCE AND BREACH OF CONTRACT

1   material misstatements, due to fraud or error.  These services have resulted in

2   approximately $1.2 million dollars in additional costs to the City.  EP made necessary

3   and significant prior period adjustments, many resulting from overlooked serious issues

4   relating to the City's outdated technological and industrial infrastructure.  The City has

5   also had to implement costly information technology master plans, fleet maintenance,

6   and internal audit programs—totaling to millions of dollars in additional expenses.

7   **FIRST CAUSE OF ACTION**

8   **(Professional Negligence)**

9   **(Against Defendant Mayer Hoffman and Does 1 through 100)**

10   24.     The City realleges and incorporates by reference the allegations of paragraphs 1

11   through 23 of this Complaint as though set forth in full.

12   25.     Mayer Hoffman and Does 1 through 100 each owed the City a duty of care, and

13   the duty to competently perform the auditing services that they were hired by the City to perform

14   in accordance with due professional care as set forth in GAAS and as legally required by holding

15   themselves out as certified public accountants.

16   26.     By committing the errors and omissions described in detail above in this

17   Complaint, Mayer Hoffman and Does 1 through 100, and each of them, breached the duty of due

18   professional care owed to the City.  The breach of these duties constitutes negligence.

19   27.     As a direct, legal and proximate result of the negligence of Mayer Hoffman and

20   Does 1 through 100, the City has incurred damages in an amount that will be proved at trial but

21   which is well in excess of the jurisdictional minimum of this court.

22   **SECOND CAUSE OF ACTION**

23   **(Breach of Contract)**

24   **(Against Defendant Mayer Hoffman and Does 25 through 100)**

25   28.     The City realleges and incorporates by reference the allegations of paragraphs 1

26   through 23 of this Complaint as though set forth in full.

27   29.     The City and Mayer Hoffman entered into several written agreements in

28   connection with the auditing services Mayer Hoffman provided to the City for each of the years

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4841-1165-0640 v1                          - 10 -

FIRST AMENDED COMPLAINT FOR DAMAGES FOR NEGLIGENCE AND BREACH OF CONTRACT

1    between 2004 through 2012.  Each agreement provides that Mayer Hoffman shall indemnify the

2    City for, among other things, any acts, errors or omissions of Mayer Hoffman, its employees,

3    representatives, subcontractors, or agents in the performance of the auditing services.

4         30.    By not performing in compliance with the contractual requirements and also

5    engaging in the acts, errors and omissions described in detail above in this Complaint, Mayer

6    Hoffman legally and proximately caused the City to incur in excess of $1 million in damages,

7    according to proof.

8         31.    Mayer Hoffman breached its contractual duties to the City by refusing to

9    indemnify the City for all costs resulting from Mayer Hoffman's acts, errors, or omissions,

10   including attorneys' fees and other costs, incurred by the City in order to legally comply with

11   accounting and finance obligations.

12        32.    As a direct, legal and proximate result of the breaches of contract by Mayer

13   Hoffman, the City has incurred damages in an amount that will be proved at trial but which is in

14   excess of the jurisdictional minimum of this court.

15                              **PRAYER FOR RELIEF**

16        The City prays for judgment against Defendant Mayer Hoffman as follows.

17        1.     For Special, General and Consequential Damages according to proof at trial.

18        2.     For interest at the legal rate on all amounts awarded;

19        3.     For attorney's fees as prevailing party and costs of suit incurred herein; and

20        4.     For further and other relief as the court deems just and proper.

21

22   Dated: September 25, 2017              BURKE, WILLIAMS & SORENSEN, LLP

23

24                                          By: *Charles E. Slyngstad*

25                                              Charles E. Slyngstad
                                                Brian S. Ginter
26                                              Lauren T. Krapf
                                            Attorneys for Plaintiff
27                                          CITY OF OXNARD

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4841-1165-0640 v1                         - 11 -

FIRST AMENDED COMPLAINT FOR DAMAGES FOR NEGLIGENCE AND BREACH OF CONTRACT

**SUM-100**

# SUMMONS ON FIRST AMENDED COMPLAINT
## (CITACION JUDICIAL)

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MAYER HOFFMAN McCANN P.C., a Missouri corporation, and DOES 1
through 100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CITY OF OXNARD, a municipal corporation

VENTURA
SUPERIOR COURT
**FILED**

SEP 2 5 2017

MICHAEL D. PLANET
Executive Officer and Clerk
BY: _____, Deputy
**ADRIANA VELASCO**

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of Ventura
Main Courthouse, Hall of Justice
800 S. Victoria Avenue
Ventura, CA 93009

CASE NUMBER:
*(Número del Caso):*
56-2017-00501459-CU-PN-VTA

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Charles E. Slyngstad, SBN 89103, Burke, Williams & Sorensen, LLP
444 S. Flower Street, Suite 2400, Los Angeles, CA 90071
Telephone: (213)236.0600 Facsimile:  (213)236.2700

**Michael D Planet**

DATE: SEP 2 5 2017
*(Fecha)*

Clerk, by _____, Deputy
*(Secretario)*      *(Adjunto)*
**ADRIANA VELASCO**

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)            ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

American LegalNet, Inc.
www.FormsWorkflow.com

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

ORIGINAL